**WILENTZ, GOLDMAN, & SPITZER, P.A.**
90 Woodbridge Center Drive, Suite 900 Box 10
Woodbridge, New Jersey 07095
Phone: (732) 855-6034
Fax: (732) 726-6698
MB-7897

--and—

**LAW OFFICE OF KIRSTEN SCHEURER BRANIGAN, P.C.**
527 Franklin Avenue
Nutley, New Jersey 07110
Phone: (973) 542-8096
Fax: (973) 542-8097
KB-8743

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LORI BEAUREGARD,<br>DENNIS BEAULIEU,<br>NORMAN COLTRI,<br>CHRISTOPHER DOUGHERTY,<br>HECTOR GONZALEZ,<br>MARGARET LYONS,<br>DAWN (ROSENBERG) MINUE,<br>DONNA SOLOMON,<br>JAMES SPILIOTIS and<br>MALCOLM TURDO, on behalf of<br>themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL W. HUNTER,<br>B. ERIC SIVERTSEN, and<br>RANDALL N. SMITH,<br><br>Defendants. | Civil Action No.<br><br>**COLLECTIVE AND CLASS<br>ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, Lori Beauregard, Dennis Beaulieu, Norman Coltri, Christopher Dougherty, Hector Gonzalez, Margaret Lyons, Dawn (Rosenberg) Minue, Donna Solomon, James Spiliotis and Malcolm Turdo, by way of Complaint against Defendants, Michael Hunter, B. Eric Sivertsen and Randall Smith, on behalf of themselves and all others similarly situated, allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs contend that Defendants violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§201, et seq. ("FLSA") by knowingly requiring, suffering or permitting them and the other members of the putative FLSA Collective ("Collective Members") to work without pay and/or for less than all amounts due to them.

2.      Plaintiffs also bring this action on behalf of themselves and all other similarly situated New Jersey plaintiffs (the "New Jersey Class Members") as a class action under Federal Rule of Civil Procedure 23 to remedy violations of the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a, et seq., and the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. 34:11-4.1, et seq.

3.      The Collective Members were employed by RCC Consultants, Inc. ("RCC" and/or the "Company"), a company incorporated in Delaware which had its headquarters in Woodbridge, New Jersey.

4.      On May 1, 2015, RCC filed for bankruptcy.  In the bankruptcy proceedings, all or substantially all of RCC's assets were sold, and RCC is being liquidated.

5.      This action is brought against Defendants Michael W. Hunter ("Defendant Hunter"), B. Eric Sivertsen ("Defendant Sivertsen") and Randall N. Smith ("Defendant Smith") in their capacities as the three members of the Board of Directors and controlling officers of RCC.

6.     During multiple pay periods specified below, the Collective Members performed work for RCC, and RCC did not pay them any wages, skipping multiple payrolls.   For one additional pay period, RCC paid only half of the wages due to the Collective Members.

7.     Defendants knowingly and willfully caused RCC not to pay wages that were due to the Collective Members during these pay periods.

8.     Defendants also knowingly and willfully failed to pay the Collective Members their accrued but unpaid vacation pay and reimbursement for business expenses, constituting additional unpaid wages.

9.     RCC likely will be unable to pay the unpaid wages owed to the Collective Members.

10.     As the members of the Board of Directors and controlling officers of RCC, Defendants are personally liable, jointly and severally, for the wages that were and are due to the Collective Members which were not paid.

## PARTIES -- PLAINTIFFS

11.     Plaintiff Lori Beauregard ("Plaintiff Beauregard") worked as Director of Human Resources for RCC in the State of New Jersey.   She resides at 97 Wellington Road, Freehold, NJ 07728.

12.     Plaintiff Dennis Beaulieu ("Plaintiff Beaulieu") worked as a Managing Consultant for RCC in the State of New Jersey. He resides at 810 Woodcrest Drive, Spring Lake Heights, NJ 07762.

13.     Plaintiff Norman Coltri ("Plaintiff Coltri") worked as a Director for RCC in the State of New Jersey. He resides at 109 Central Avenue, North Wildwood, NJ 08260.

14.    Plaintiff Christopher Dougherty ("Plaintiff Dougherty") worked as Director DAS Program Management for RCC in the State of New Jersey.  He resides at 1207 3rd Avenue, Asbury Park, NJ 07712.

15.    Plaintiff Hector Gonzalez ("Plaintiff Gonzalez") worked as IT Systems Manager for RCC in the State of New Jersey. He resides at 12 Kings Way, Freehold, NJ 07728.

16.    Plaintiff Margaret Lyons ("Plaintiff Lyons") worked as Sub Region Director for RCC in the State of New Jersey.  She resides at 184 Kentucky Way, Freehold, NJ 07728.

17.    Plaintiff Dawn (Rosenberg) Minue ("Plaintiff Minue") worked as an Administrative Assistant for RCC in the State of New Jersey. She resides at 42 Wendy Road, Colonia, NJ 07067.

18.    Plaintiff Donna Solomon ("Plaintiff Solomon") worked as Senior Human Resources Generalist for RCC in the State of New Jersey. She resides at 100 Barron Circle, Unit 3154, Somerset, NJ 08873.

19.    Plaintiff James Spiliotis ("Plaintiff Spiliotis") worked as a Managing Consultant for RCC in the State of New Jersey. He resides at 41 Pilgrim Avenue, Tinton Falls, NJ 07753-7842.

20.    Plaintiff Malcolm Turdo ("Plaintiff Turdo") worked as a Wireless Systems Consultant for RCC in the State of New Jersey. He resides at 3106 Harrison Street, Wall, NJ 07719.

21.    The Plaintiffs listed above are former RCC employees who are representative of the collective of RCC employees who were aggrieved by the Defendants (hereafter referred to as "Plaintiffs").

22.     Because Plaintiffs are pursuing their claims under the FLSA as a collective action, they are filing, attached to this Complaint as Exhibit A, signed opt-in consent forms for all ten (10) named plaintiffs.

23.     Attached to this Complaint as Exhibit B are additional signed opt-in consent forms for other opt-in plaintiffs joining the lawsuit at this time, totaling 59 signed opt-in forms.

## PARTIES -- DEFENDANTS

24.     Defendant Hunter was and is the President and Chief Executive Officer of RCC and one of the three members of the Board of Directors of RCC.  On information and belief, he resides at 233 Zion Road, Hillsborough, New Jersey 08844.

25.     Defendant Sivertsen was and is an Executive Vice President, the Secretary, and the Treasurer of RCC and one of the three members of the Board of Directors.  On information and belief, he resides at 4841 Foxhall Crescent, NW, Washington, DC, 20007.  On information and belief, he may also reside at 16711 Collins Ave., Sunny Isles Beach, FL 33160 and at 12512 Fenhurst Way, Naples, FL.

26.     Defendant Smith was and is one of the three Members of the Board of Directors of RCC and was and is referred to as the Chairman of the Board of Directors of RCC.  On information and belief, he resides at 1317 Beverly Estate Drive, Beverly Hills, CA 90210.

## JURISDICTION AND VENUE

27.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because Plaintiffs' claims in the First Count arise under the FLSA, 29 U.S.C. §§ 201 et seq.

28.     This Court has supplemental jurisdiction over the other claims in this Complaint under 28 U.S.C. § 1367 because the claims in all of the counts arise out of the same operative facts and are so closely related that they form part of the same case or controversy.

29.     The other claims contained in the within Complaint include claims under the NJWHL, N.J.S.A. §34:11-56a et seq., and the NJWPL, N.J.S.A. §34:11-4.1 et seq.

30.     Venue in this District is proper under 28 U.S.C. § 1391(b)(2) and (3), as a substantial part of the events giving rise to the claims in this action occurred in New Jersey, and Defendant Hunter resides in New Jersey, as do the ten (10) named plaintiffs and numerous other Collective Members.

31.     This Court has personal jurisdiction over Defendant Hunter because he resides in New Jersey and because he took the actions alleged in this Complaint in New Jersey.

32.     This Court has personal jurisdiction over Defendant Sivertsen because he was an Executive Vice President, the Secretary, the Treasurer, and a member of the Board Directors of RCC, which was a corporation with its headquarters in New Jersey, and the actions he took, including actions taken in New Jersey as alleged in this Complaint, were directed at and affected the Company and its employees in New Jersey, including all of the named Plaintiffs and numerous others.

33.     This Court has personal jurisdiction over Defendant Smith because he was a member of the Board Directors of RCC, and the Chairman of the Board of Directors of RCC, a corporation with its headquarters in New Jersey, and the actions he took, including actions taken in New Jersey as alleged in this Complaint, were directed at and affected the Company and its employees in New Jersey, including all of the named Plaintiffs and numerous others.

## FACTS COMMON TO ALL PLAINTIFFS

34.     RCC did not pay wages that were due to the Plaintiffs and the Collective Members for work they performed as employees of RCC on the following regular RCC payroll dates (collectively the "Pay Dates"): September 21, 2014, February 20, 2015, March 20, 2015,

and April 20, 2015.  In addition, on October 22, 2014, also a regular payroll date, RCC paid only

half of the wages owed to the Plaintiffs and the Collective Members.

35.     At RCC during this period, there were two payroll dates per month on which RCC

employees were paid.  [In this Complaint, the pay periods corresponding to the September 21,

2014 February 20, 2015, March 20, 2015 and April 20, 2015 payroll dates are referred to as the

"Pay Periods"; the pay period corresponding to the October 22, 2014 pay date is referred to as

the "October Pay Period."]

36.     Defendant Hunter made decisions about hiring employees to work at RCC.

37.     Employees could not be hired at RCC without Defendant Hunter's approval.

38.     Defendant Hunter made decisions about terminating employees from RCC.

39.     Employees could not be terminated from RCC without Defendant Hunter's

approval.

40.     Defendant Hunter controlled the compensation of RCC employees.

41.     The compensation of RCC employees could not be changed without Defendant

Hunter's approval.

42.     Defendant Hunter controlled the hours of certain employees.

43.     Defendant Hunter issued, signed, and approved the policies in RCC's Employee

Guidelines Manual.

44.     Defendant Hunter controlled the policies in RCC's Employee Guidelines Manual.

45.     Only Defendant Hunter had the ability to adopt any revisions to the policies in

RCC's Employee Guidelines Manual.

46.     During the period in 2014 and 2015 when RCC skipped payrolls, Defendant

Hunter, as President and CEO and a Director of RCC, was directly involved in and made the

final decisions about whether to continue to employ the Plaintiffs and the Collective Members and whether to use RCC's available funds to pay them the wages due to them or whether instead to use RCC's available funds for other purposes.

47.     When RCC did not have sufficient funds to pay all of its obligations in full, Defendant Hunter decided which obligations would be paid and which would not.

48.     When RCC did not have sufficient funds to pay all of its obligations in full, Defendant Hunter decided whether employees would be paid the full wages they had earned for work they had performed.

49.     When RCC did not have sufficient funds to pay all of its obligations in full, Defendant Hunter decided whether employees would be reimbursed for the business expenses they paid.

50.     During the period in 2014 and 2015 when RCC skipped payrolls, Defendant Sivertsen, as an Executive Vice President, the Secretary, and the Treasurer of RCC, and one of the three members of its Board Directors, was directly involved in and jointly made the decisions about whether to continue to employ the Plaintiffs and the Collective Members and whether to use RCC's available funds to pay Plaintiffs and the Collective Members the wages due to them or whether instead to use RCC's available funds for other purposes.

51.     Defendant Sivertsen was involved in decisions about employee compensation.

52.     For example, Defendant Sivertsen advocated that the salaries of certain employees be reduced, and the salaries of those employees were reduced.

53.     Defendant Sivertsen was involved in decisions about terminations of employees. For example, Defendant Sivertsen advocated that certain employees be terminated to reduce RCC's costs, and many of those employees were terminated.

54.    As a member of the Board of Directors, Defendant Sivertsen authorized Defendant Hunter to make the above-referenced decisions.

55.    As a member of the Board of Directors, Defendant Sivertsen allowed Defendant Hunter to make the decisions alleged above.

56.    During the period in 2014 and 2015 when RCC skipped payrolls, Defendant Smith, as a Director of RCC, was directly involved in and jointly made the decisions about whether to continue to employ the Plaintiffs and the Collective Members and whether to use RCC's available funds to pay them the wages due to them or whether instead to use RCC's available funds for other purposes.

57.    When RCC did not have sufficient funds to pay all of its obligations in full, Defendant Smith was involved in decisions about which obligations would be paid.

58.    For example, Defendant Smith advocated that certain payments be made, such as payments to Telecom Acquisition Group.  Payments advocated by Defendant Smith were made when wages due to the Plaintiffs and the Collective Members were not paid.

59.    As a member of the Board of Directors, Defendant Smith authorized and allowed Defendant Hunter to make the above-referenced decisions.

60.    Before each Pay Period commenced, the Defendants knew or had reason to know that RCC was having financial difficulty.

61.    Before each Pay Period, the Defendants knew or had reason to know that RCC would not be able to pay in full all of its financial obligations that would come due by the Pay Date associated with the Pay Period.

62.    Nonetheless, each of the Defendants directly participated in the decision to continue employing the Plaintiffs and the Collective Members during the Pay Periods.

63.     Before each Pay Period, the Defendants could have terminated the employment of the Plaintiffs and the Collective Members and avoided incurring obligations to pay wages to them for the Pay Period.

64.     Each of the Defendants directly participated in the decision to continue employing the Plaintiffs and the Collective Members during the Pay Periods and to incur the obligations to pay wages to them.

65.     Before each Pay Period, the Defendants could have caused RCC to file for bankruptcy to obtain relief from its non-wage obligations and could have used its available funds to pay in full wages that would be earned by the Plaintiffs and the Collective Members during the Pay Periods.

66.     Each of the Defendants directly participated in the decisions to continue operating RCC without filing for bankruptcy and to incur obligations to pay wages to the Plaintiffs and the Collective Members for the Pay Periods that RCC would not be able to pay.

67.     Defendants, as the Board of Directors and controlling officers, decided on a strategy to continue operating RCC until the Company could achieve a "liquidity event", such as a sale of the Company or an investment in the Company.

68.     Defendants, as the Board of Directors and controlling officers, decided to continue operating RCC in an effort to achieve a "liquidity event" while knowing that doing so created a risk that RCC would not be able to pay all wages when they were due to the Plaintiffs and the Collective Members.

69.     Defendants, as the Board of Directors and controlling officers, decided to continue operating RCC in an effort to achieve a "liquidity event" while deferring payment of

wages to the Plaintiffs and the Collective Members for the Pay Periods in the hope that the unpaid wages could be paid later, but the wages were not paid later.

70.     Before each Pay Period, Defendants knew that if RCC continued to employ the Plaintiffs and the Collective Members during the Pay Period, RCC would have a legal obligation to pay them the wages they would earn during the Pay Period.

71.     Each of the Defendants directly participated in the decisions to incur legal obligations to pay the Plaintiffs and the Collective Members the wages they earned during the Pay Periods.

72.     Before each Pay Date, the Defendants determined to use RCC's available funds to pay financial obligations other than the wages that were earned by the Plaintiffs and the Collective Members during the associated Pay Period.

73.     Each of the Defendants directly participated in the decisions to use RCC's available funds for other purposes and not to pay the wages due to the Plaintiffs and the Collective Members on each of the Pay Dates.

74.     After RCC failed to pay the Plaintiffs and the Collective Members wages they earned, each of the Defendants directly participated in the decisions to use RCC's available funds for other purposes and not to pay the outstanding wages owed to the Plaintiffs and the Collective Members.

75.     RCC's policy and practice was to pay employees the cash value for accrued but unused vacation when their employment ended.

76.     Employees were able to carry over vacation time from year to year.

77.     None of the Plaintiffs or the Collective Members is still employed with RCC.

78.     RCC has not paid certain of the Plaintiffs for their accrued but unused vacation, as specified below.

79.     RCC has not paid other Collective Members for their accrued but unused vacation.

80.     Each of the Defendants directly participated in the decision not to pay the amounts due to the Plaintiffs and the Collective Members for accrued but unused vacation.

81.     Certain of the Plaintiffs incurred business expenses in connection with their work as employees of RCC, in amounts specified below, which RCC approved and was obligated to reimburse, but has not reimbursed.

82.     RCC has not reimbursed other Collective Members for their approved business expenses.

83.     Each of the Defendants directly participated in the decision not to pay the amounts RCC owed to the Plaintiffs and the Collective Members for unreimbursed business expenses.

84.     Each of the Defendants knew that RCC had a legal obligation to pay in full the wages that were owed to the Plaintiffs and the Collective Members, and that failing to pay the wages violated the law, and each of the Defendants directly participated in the decisions not to pay the wages.

85.     Prior to each Pay Date, Defendant Hunter obtained and reviewed information about RCC's cash position and RCC's financial obligations and decided which of RCC's financial obligations would be fully paid and which would not, including whether RCC would pay the wages due to the Plaintiffs and the Collective Members in full, in part, or not at all.

86.     Defendants Sivertsen and Smith were advised of Defendant Hunter's decisions regarding whether to pay the wages due to the Plaintiffs and the Collective Members.

87.     Defendants Sivertsen and Smith agreed with the non-payment of wages.

88.     Defendants Sivertsen and Smith could have prevented the non-payment of wages.

89.     Defendants Sivertsen and Smith did not prevent the non-payment of wages.

90.     Each of the Defendants willfully caused RCC not to pay the wages owed to the Plaintiffs and the Collective Members.

91.     RCC does not have sufficient assets to pay the Plaintiffs and the Collective Members the wages (including vacation pay and unreimbursed expenses) they are owed.

**Facts Regarding Amounts Due to Plaintiff Lori Beauregard**

92.     Plaintiff Beauregard worked full-time during each of the Pay Periods.

93.     Plaintiff Beauregard was owed wages in the form of salary for her work in each of the Pay Periods.

94.     Plaintiff Beauregard was not paid any wages for any of the Pay Periods, except that Plaintiff Beauregard was paid one-half of the salary she was owed for the October Pay Period.

95.     The amounts of wages that were earned by Plaintiff Beauregard and were not paid on the Pay Dates are as follows:

| Missed Payrolls | Pay Date | Amount |
|---|---|---|
| Full Missed P/R | 9/21/2014 | $3,427.38 |
| Half Missed P/R | 10/22/2014 | $1,713.69 |
| Full Missed P/R | 2/20/2015 | $3,427.38 |
| Full Missed P/R | 3/20/2015 | $3,427.38 |
| Full Missed P/R | 4/20/2015 | $3,427.38 |
| **TOTAL** | | **$15,423.21** |

96.    The dollar amount of accrued but unused vacation that Plaintiff Beauregard earned and that was not paid to her is: **$9,887.43**, representing 250 hours of accrued but unused vacation.

97.    Because Plaintiff Beauregard was paid no wages at all for her work during the Pay Periods (and was paid half of the salary due for the October Pay Period), Plaintiff Beauregard was not paid the minimum wage required by law during the Pay Periods (other than the October Pay Period).

### Facts Regarding Amounts Due to Plaintiff Dennis Beaulieu

98.    Plaintiff Beaulieu worked full-time during each of the Pay Periods.

99.    Plaintiff Beaulieu was owed wages in the form of salary for his work in each of the Pay Periods.

100.   Plaintiff Beaulieu was not paid any wages for any of the Pay Periods, except that Plaintiff Beaulieu was paid one-half of the salary he was owed for the October Pay Period.

101.   The amounts of wages that were earned by Plaintiff Beaulieu and were not paid on the Pay Dates are as follows:

| Missed Payrolls | Pay Date | Amount |
|---|---|---|
| Full Missed P/R | 9/21/2014 | $4,437.50 |
| Half Missed P/R | 10/22/2014 | $2,218.75 |
| Full Missed P/R | 2/20/2015 | $4,437.50 |
| Full Missed P/R | 3/20/2015 | $4,437.50 |
| Full Missed P/R | 4/20/2015 | $4,437.50 |
| **TOTAL** | | **$19,968.75** |

102.   Because Plaintiff Beaulieu was paid no wages at all for his work during the Pay Periods (and he was paid half of the salary due for the October Pay Period), Plaintiff Beaulieu

was not paid the minimum wage required by law during the Pay Periods (other than the October Pay Period).

### Facts Regarding Amounts Due to Plaintiff Norman Coltri

103.   Plaintiff Coltri worked full-time during each of the Pay Periods.

104.   Plaintiff Coltri was owed wages in the form of salary for his work in each of the Pay Periods.

105.   Plaintiff Coltri was not paid any wages for any of the Pay Periods, except that Plaintiff Coltri was paid one-half of the salary he was owed for the October Pay Period.

106.   The amounts of wages that were earned by Plaintiff Coltri and were not paid on the Pay Dates are as follows:

| Missed Payrolls | Pay Date | Amount |
|-----------------|-----------|------------|
| Full Missed P/R | 9/21/2014 | $5,408.33 |
| Half Missed P/R | 10/22/2014 | $2,704.17 |
| Full Missed P/R | 2/20/2015 | $5,408.33 |
| Full Missed P/R | 3/20/2015 | $5,408.33 |
| Full Missed P/R | 4/20/2015 | $5,408.33 |
| **TOTAL** | | **$24,337.49** |

107.   The amount of unreimbursed business expenses that were owed but not paid to Plaintiff Coltri is: **$1,360.33**.

108.   Because Plaintiff Coltri was paid no wages at all for his work during the Pay Periods (and was paid half of the salary due for the October Pay Period), Plaintiff Coltri was not paid the minimum wage required by law during the Pay Periods (other than the October Pay Period).

### Facts Regarding Amounts Due to Plaintiff Christopher Dougherty

109.   Plaintiff Dougherty worked full-time during each of the Pay Periods.

110.   Plaintiff Dougherty was owed wages in the form of salary for his work in each of the Pay Periods.

111.   Plaintiff Dougherty was not paid any wages for any of the Pay Periods, except that Plaintiff Dougherty was paid one-half of the salary he was owed for the October Pay Period.

112.   The amounts of wages that were earned by Plaintiff Dougherty and were not paid on the Pay Dates are as follows:

| Missed Payrolls | Pay Date | Amount |
|---|---|---|
| Full Missed P/R | 9/21/2014 | $4,750.00 |
| Half Missed P/R | 10/22/2014 | $2,375.00 |
| Full Missed P/R | 2/20/2015 | $4,750.00 |
| Full Missed P/R | 3/20/2015 | $4,750.00 |
| Full Missed P/R | 4/20/2015 | $4,750.00 |
| TOTAL | | $21,375.00 |

113.   The dollar amount of accrued but unused vacation that Plaintiff Dougherty earned and that was not paid to him is: **$438.50**, representing 8 hours of accrued but unused vacation.

114.   Because Plaintiff Dougherty was paid no wages at all for his work during the Pay Periods (and was paid half of the salary due for the October Pay Period), Plaintiff Dougherty was not paid the minimum wage required by law during the Pay Periods (other than the October Pay Period).

**Facts Regarding Amounts Due to Plaintiff Hector Gonzalez**

115.   Plaintiff Gonzalez worked full-time during each of the Pay Periods.

116.   Plaintiff Gonzalez was owed wages in the form of salary for his work in each of the Pay Periods.

117.   Plaintiff Gonzalez was not paid any wages for any of the Pay Periods, except that Plaintiff Gonzalez was paid one-half of the salary he was owed for the October Pay Period.

118.    The amounts of wages that were earned by Plaintiff Gonzalez and were not paid on the Pay Dates are as follows:

| Missed Payrolls | Pay Date | Amount |
|---|---|---|
| Full Missed P/R | 9/21/2014 | $3,597.84 |
| Half Missed P/R | 10/22/2014 | $1,798.92 |
| Full Missed P/R | 2/20/2015 | $3,597.84 |
| Full Missed P/R | 3/20/2015 | $3,597.84 |
| Full Missed P/R | 4/20/2015 | $3,597.84 |
| TOTAL | | $16,190.28 |

119.    The dollar amount of accrued but unused vacation that Plaintiff Gonzales earned and that was not paid to him is: **$7,659.83**, representing 184.50 hours of accrued but unused vacation.

120.    The amount of unreimbursed business expenses that were owed but not paid to Plaintiff Gonzalez is: **$929.27**.

121.    Because Plaintiff Gonzalez was paid no wages at all for his work during the Pay Periods (and was paid half of the salary due for the October Pay Period), Plaintiff Gonzalez was not paid the minimum wage required by law during the Pay Periods (other than the October Pay Period).

### Facts Regarding Amounts Due to Plaintiff Margaret Lyons

122.    Plaintiff Lyons worked full-time during each of the Pay Periods.

123.    Plaintiff Lyons was owed wages in the form of salary for her work in each of the Pay Periods.

124.    Plaintiff Lyons was not paid any wages for any of the Pay Periods, except that Plaintiff Lyons was paid one-half of the salary she was owed for the October Pay Period.

17

125.    The amounts of wages that were earned by Plaintiff Lyons and were not paid on the Pay Dates are as follows:

| Missed Payrolls | Pay Date | Amount |
|---|---|---|
| Full Missed P/R | 9/21/2014 | $4,929.68 |
| Half Missed P/R | 10/22/2014 | $2,464.84 |
| Full Missed P/R | 2/20/2015 | $4,929.68 |
| Full Missed P/R | 3/20/2015 | $4,929.68 |
| Full Missed P/R | 4/20/2015 | $4,929.68 |
| TOTAL | | $22,183.56 |

126.    The amount of unreimbursed business expenses that were owed but not paid to Plaintiff Lyons is: **$1,958.08**.

127.    Because Plaintiff Lyons was paid no wages at all for her work during the Pay Periods (and was paid half of the salary due for the October Pay Period), Plaintiff Lyons was not paid the minimum wage required by law during the Pay Periods (other than the October Pay Period).

**Facts Regarding Amounts Due to Plaintiff Dawn (Rosenberg) Minue**

128.    Plaintiff Minue worked full-time during each of the Pay Periods.

129.    Plaintiff Minue was owed wages in the form of salary for her work in each of the Pay Periods.

130.    Plaintiff Minue was not paid any wages for any of the Pay Periods, except that Plaintiff Minue was paid one-half of the salary she was owed for the October Pay Period.

131.    The amounts of wages that were earned by Plaintiff Minue and were not paid on the Pay Dates are as follows:

| Missed Payrolls | Pay Date | Amount |
|---|---|---|
| Full Missed P/R | 9/21/2014 | $1,666.67 |
| Half Missed P/R | 10/22/2014 | $833.34 |
| Full Missed P/R | 2/20/2015 | $1,666.67 |
| Full Missed P/R | 3/20/2015 | $1,666.67 |
| Full Missed P/R | 4/20/2015 | $1,958.34 |
| TOTAL | | $7,791.69 |

132.    Because Plaintiff Minue was paid no wages at all for her work during the Pay Periods (and was paid half of the salary due for the October Pay Period), Plaintiff Minue was not paid the minimum wage required by law during the Pay Periods (other than the October Pay Period).

**Facts Regarding Amounts Due to Plaintiff Donna Solomon**

133.    Plaintiff Solomon worked full-time during each of the Pay Periods.

134.    Plaintiff Solomon was owed wages in the form of salary for her work in each of the Pay Periods.

135.    Plaintiff Solomon was not paid any wages for any of the Pay Periods, except that Plaintiff Solomon was paid one-half of the salary she was owed for the October Pay Period.

136.    The amounts of wages that were earned by Plaintiff Solomon and were not paid on the Pay Dates are as follows:

| Missed Payrolls | Pay Date | Amount |
|---|---|---|
| Full Missed P/R | 9/21/2014 | $2,277.83 |
| Half Missed P/R | 10/22/2014 | $1,213.96 |
| Full Missed P/R | 2/20/2015 | $2,213.96 |
| Full Missed P/R | 3/20/2015 | $2,354.47 |
| Full Missed P/R | 4/20/2015 | $2,405.57 |
| TOTAL | | $10,465.79 |

137.    Because Plaintiff Solomon was paid no wages at all for her work during the Pay Periods (and was paid half of the salary due for the October Pay Period), Plaintiff Solomon was not paid the minimum wage required by law during the Pay Periods (other than the October Pay Period).

**Facts Regarding Amounts Due to Plaintiff James Spiliotis**

138.    Plaintiff Spiliotis worked full-time during each of the Pay Periods.

139.    Plaintiff Spiliotis was owed wages in the form of salary for his work in each of the Pay Periods.

140.    Plaintiff Spiliotis was not paid any wages for any of the Pay Periods, except that Plaintiff Spiliotis was paid one-half of the salary he was owed for the October Pay Period.

141.    The amounts of wages that were earned by Plaintiff Spiliotis and were not paid on the Pay Dates are as follows:

| Missed Payrolls | Pay Date | Amount |
|-----------------|----------|--------|
| Full Missed P/R | 9/21/2014 | $4,375.00 |
| Half Missed P/R | 10/22/2014 | $2,187.50 |
| Full Missed P/R | 2/20/2015 | $4,375.00 |
| Full Missed P/R | 3/20/2015 | $4,375.00 |
| Full Missed P/R | 4/20/2015 | $4,375.00 |
| **TOTAL** | | **$19,687.50** |

142.    The amount of unreimbursed business expenses that were owed but not paid to Plaintiff Spiliotis is: **$145.29**.

143.    Because Plaintiff Spiliotis was paid no wages at all for his work during the Pay Periods (and was paid half of the salary due for the October Pay Period), Plaintiff Spiliotis was not paid the minimum wage required by law during the Pay Periods (other than the October Pay Period).

## Facts Regarding Amounts Due to Plaintiff Malcolm Turdo

144.   Plaintiff Turdo worked full-time during each of the Pay Periods.

145.   Plaintiff Turdo was owed wages in the form of salary for his work in each of the Pay Periods.

146.   Plaintiff Turdo was not paid any wages for any of the Pay Periods, except that Plaintiff Turdo was paid one-half of the salary he was owed for the October Pay Period.

147.   The amounts of wages that were earned by Plaintiff Turdo and were not paid on the Pay Dates are as follows:

| Missed Payrolls | Pay Date | Amount |
|---|---|---|
| Full Missed P/R | 9/21/2014 | $2,843.75 |
| Half Missed P/R | 10/22/2014 | $1,421.88 |
| Full Missed P/R | 2/20/2015 | $2,843.75 |
| Full Missed P/R | 3/20/2015 | $2,843.75 |
| Full Missed P/R | 4/20/2015 | $2,843.75 |
| **TOTAL** | | **$12,796.88** |

148.   Because Plaintiff Turdo was paid no wages at all for his work during the Pay Periods (and was paid half of the salary due for the October Pay Period), Plaintiff Turdo was not paid the minimum wage required by law during the Pay Periods (other than the October Pay Period).

## COLLECTIVE ACTION ALLEGATIONS

149.   Plaintiffs bring this collective action for themselves and all others similarly situated pursuant to 29 U.S.C. §216(b) to recover unpaid minimum wages, liquidated damages and other damages related to Defendants' violations of the FLSA.

150.   Plaintiffs pursue the requested relief on behalf of the following Collective Members:

> All individuals who worked full-time for RCC during the applicable
> statute of limitations period, and performed work without receiving
> minimum wages, or any wages, owed for such work, including accrued
> but unused vacation time and/or reimbursable business expenses ,
> excluding Defendants, Defendant Hunter's daughter, Lindsay Hunter
> Carrion, and the Plaintiffs in the Civil Action entitled Apicella et al. v
> Hunter, Civil Action 3:16-cv-03599, specifically: Stephen T. Apicella;
> Carl Robert Aron; John A. Facella; Robert A. Lopez; Gregory A.
> Munchrath; Nagah M. Ramadan; and Cherrill Edwina Shea ("the
> Collective").

151.  Plaintiffs are appropriate members of the Collective they seek to represent, because they were RCC employees during the relevant period, and they were routinely required, suffered or permitted to work full time and were not paid minimum wages, or any wages, during multiple Pay Periods.

152.  Defendants engaged in a common scheme requiring, suffering or permitting the Plaintiffs and the Collective Members to work and avoid paying them minimum wage, or any wage.

153.  Although the Plaintiffs and the Collective Members may have had different job titles, and/or worked in different offices or states for Defendants throughout the relevant period, this action properly may be maintained as a collective action because the Plaintiffs and the Collective Members were similarly situated as follows:

    a.    Plaintiffs and the Collective Members all worked for RCC and were not paid properly as set forth herein;

    b.    Defendants required, suffered or permitted the Plaintiffs and the Collective Members to work without paying them minimum wage or any wage;

    c.    Regardless of their job title or location, Defendants did not pay the Plaintiffs and the Collective Members minimum wage, or any wage, for the Pay Periods;

d.    Defendants controlled or authorized the policies contained in RCC's Employee Guidelines Manual;

e.    Defendants controlled the hiring and termination of the Plaintiffs and the Collective Members;

f.    Defendants controlled the compensation of the Plaintiffs and the Collective Members;

g.    Defendants controlled the work hours of the Plaintiffs and the Collective Members;

h.    Defendants were directly involved in and jointly made the decisions to continue to employ the Plaintiffs and the Collective Members without paying them;

i.    Defendants were directly involved in and jointly made the decisions not to pay the Plaintiffs and the Collective Members the wages due to them and instead to use RCC's available funds for other purposes;

j.    Defendants were directly involved in and jointly made the decisions as to which Plaintiffs and Collective Members would be paid the full wages they had earned for work they had performed;

k.    Defendants were directly involved in and jointly made the decisions as to which employees would be reimbursed for the business expenses they incurred when RCC did not have sufficient funds to pay all of its obligations in full;

l.    Defendants were directly involved in and jointly made the decision not to pay the Plaintiffs and the Collective Members for their accrued, but

unused vacation when RCC did not have sufficient funds to pay all of its obligations in full;

m.   Defendants knew or had reason to know prior to each Pay Period that RCC would not be able to pay in full all of its financial obligations that would come due by the Pay Date associated with the Pay Period;

n.   Defendants were directly involved in and jointly made the decision not to terminate the employment of the Plaintiffs and Collective Members prior to the beginning of each Pay Period in order to avoid incurring obligations to pay wages to the Plaintiffs and the Collective Members;

o.   Defendants were directly involved in and jointly made the decision prior to each Pay Period not to cause RCC to file for bankruptcy to obtain relief from its non-wage obligations and not to use its available funds to pay the Plaintiffs and the Collective Members the wages due to them;

p.   Defendants were directly involved in and jointly made the strategy decision to continue operating RCC until RCC could achieve a "liquidity event" and not to use its available funds to pay wages to the Plaintiffs and the Collective Members;

q.   Defendants knew that RCC had a legal obligation to pay in full the wages that were owed to the Plaintiffs and the Collective Members and that failing to pay the wages violated the law, and were directly involved in and jointly made the decision not to fulfill their legal obligations; and

r.   Defendants willfully made the decision not to pay in full the wages that were owed to the Plaintiffs and the Collective Members and directly and

jointly made the decision not to fulfill their legal obligations and to violate the FLSA.

154.    Defendants' unlawful conduct was widespread, repeated, and systematic.

155.    Plaintiffs estimate that the Collective over the relevant period will include at least approximately eighty-nine (89) members.  Given the composition and size of the Collective, its members may be informed of the pendency of this action directly via U.S. mail and via electronic mail.  The precise number of Collective Members should be readily available from Defendants' personnel files, scheduling records and from input received from the Collective Members as part of the notice and "opt-in" process provided by 29 U.S.C. §216(b).

## NEW JERSEY CLASS ALLEGATIONS

156.    Plaintiffs bring the Second and Third Causes of Action, for violation of the NJWHL, N.J.S.A. §34:11-56a et seq., and for violation of the NJWPL, N.J.S.A. §34:11-4.1 et seq., under Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following New Jersey Class:

> All individuals who worked full-time for RCC in New Jersey during the applicable statute of limitations period, and performed work without receiving minimum wages, or any wages, owed for such work, including accrued but unused vacation time and/or reimbursable business expenses, excluding Defendants, Defendant Hunter's daughter, Lindsay Hunter Carrion, and the Plaintiffs in the Civil Action entitled Apicella et al. v Hunter, Civil Action No. 3:16-cv-03599, specifically:  Stephen T. Apicella; Carl Robert Aron; John A. Facella; Robert A. Lopez; Gregory A. Munchrath; Nagah M. Ramadan; and Cherrill Edwina Shea ("The New Jersey Class").

157.    The persons in the New Jersey Class identified above are so numerous that joinder of all members is impracticable.  The number of persons in the New Jersey Class is estimated to be approximately twenty-eight (28).

158.   As set forth in detail above, Defendants acted or refused to act on grounds generally applicable to the New Jersey Class, thereby making appropriate compensatory and other relief with respect to the New Jersey Class as a whole.

159.   This action is properly maintainable as a class action.   There are material questions of law and fact common to the New Jersey Class that predominate over any questions solely affecting individual members of the New Jersey Class, as set forth above in detail, and including, but not limited to:

    a.   Whether Defendants failed and/or refused to pay the New Jersey Class Members minimum wage for the Pay Periods, as required by the NJWHL;

    b.   Whether Defendants failed and/or refused to pay the New Jersey Class Members proper wages for the Pay Periods, including accrued but unused vacation time and reimbursable business expenses, as required by the NJWPL;

    c.   The nature and extent of the class-wide injury and the appropriate measure of damages for the New Jersey Class;

    d.   Whether Defendants had a policy of denying the New Jersey Class Members minimum wage for the Pay Periods, in violation of the NJWHL;

    e.   Whether Defendants had a policy of denying the New Jersey Class Members wages, including accrued but unused vacation time and reimbursable business expenses, as required by the NJWPL;

    f.   Whether Defendants willfully or recklessly disregarded the law in implementing the subject wage and hour and wage payment policies applicable to the New Jersey Class.

160.    Plaintiffs' claims are typical of the claims of the New Jersey Class they seek to represent.  Plaintiffs and the New Jersey Class Members worked for Defendants in New Jersey and were subjected to their policy and pattern or practice of failing to pay minimum wages, or any wages, including accrued but unused vacation time and reimbursable business expenses, as required by the NJWPL and the NJWHL.

161.    Defendants acted and refused to act on grounds generally applicable to the New Jersey Class, thereby making compensatory and other relief with respect to the New Jersey Class appropriate.

162.    Plaintiffs have retained competent counsel experienced in complex wage and hour litigation.

163.    A class action is superior to other available methods for the fair and efficient adjudication of this wage and hour litigation, particularly as individual plaintiffs may lack the financial resources to vigorously prosecute this type of lawsuit, against the individual Defendants, given that their former employer, RCC, is bankrupt.

164.    The New Jersey Class Members have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual members of the New Jersey Class are not *de minimis*, such damages are small when compared with the expense and burden of individual prosecution of this litigation.

165.    Class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

### FIRST CAUSE OF ACTION
### Violation of the FLSA, 29 U.S.C. §§206, 216
### (Brought on behalf of Plaintiffs and The Collective Members)

166.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

167.    In 2014 and 2015, RCC had an annual dollar volume of at least $500,000.

168.    In 2014 and 2015, RCC was an employer engaged in commerce within the meaning of 29 U.S.C. §206.

169.    Defendant Hunter was an employer of the Plaintiffs and the Collective Members during the Pay Periods within the meaning of 29 U.S.C. §§ 203(d) and 206, because Hunter was the President and CEO and one of the three members of the Board of Directors of RCC, and was directly involved in and made the decisions to employ the Plaintiffs and the Collective Members and not to pay them any minimum wages or any wages for the work Plaintiffs did during Pay Periods (other than the October Pay Period) as alleged above, either on the associated Pay Dates or at any time thereafter.

170.    Defendant Smith was an employer of the Plaintiffs and the Collective Members during the Pay Periods within the meaning of 29 U.S.C. §§ 203(d) and 206, because he was one of the three members of the Board of Directors of RCC and referred to as the Chairman of the Board, and was directly involved in and made the decisions to employ the Plaintiffs and the Collective Members and not to pay them any minimum wages or any wages for the work Plaintiffs and the Collective Members did during Pay Periods (other than the October Pay Period) as alleged above, either on the associated Pay Dates or at any time thereafter.

171.    Defendant Sivertsen was an employer of the Plaintiffs and the Collective Members during the Pay Periods within the meaning of 29 U.S.C. §§ 203(d) and 206, because he was an Executive Vice President, the Secretary, the Treasurer, and one of the three members of

the Board of Directors of RCC, and was directly involved in and made the decisions to employ the Plaintiffs and the Collective Members and not to pay them minimum wages or any wages for the work Plaintiffs and the Collective Members did during Pay Periods (other than the October Pay Period) as alleged above, either on the associated Pay Dates or at any time thereafter.

172.   During the Pay Periods in which they worked, Plaintiff and the Collective Members were employed and engaged in commerce, within the meaning of 29 U.S.C. §206.

173.   As part of their regular work for RCC, Plaintiffs and the Collective Members regularly engaged in interstate communications by telephone, email, and internet.

174.   As part of their regular duties for RCC, Plaintiffs and the Collective Members sometimes engaged in interstate travel.

175.   Plaintiffs and the Collective Members are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. §216(b).

176.   The FLSA, at 29 U.S.C. §206, states that every employer shall pay a minimum wage "to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce."

177.   Defendants did not pay the Plaintiffs and the Collective Members minimum wages, or any wages at all, during the Pay Periods in which they worked, even though they worked full-time, approximately 40 hours per week or more, during those Pay Periods.

178.   Plaintiffs and the Collective Members were not exempt from the minimum wage requirements of 29 U.S.C. §206 during any Pay Period during which they worked and received no wages, because during such Pay Periods, they were not paid at least $455 per week on a salary basis within the meaning of 29 C.F.R. § 541.602.  See 29 C.F.R. § 541.603.

179.   Under 29 C.F.R. § 541.602, "An employee will be considered to be paid on a 'salary basis' within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."

180.   Because the Plaintiffs and the Collective Members did not receive a predetermined amount of compensation in excess of $455 per week in any of the Pay Periods, they were not paid on a salary basis during the Pay Periods and did not qualify for any exemption from the minimum wage requirements of the FLSA.

181.   Plaintiffs and the Collective Members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of minimum wages owed for time worked from which Defendants derived a direct and substantial benefit.

182.   By their conduct, as set forth herein, Defendants violated 29 U.S.C. §206 by failing to pay the Plaintiffs and the Collective Members the required minimum wage for all hours they worked during the Pay Periods, other than the October Pay Period.

183.   Defendants Hunter, Sivertsen, and Smith are jointly and severally liable to the Plaintiffs and the Collective Members for the minimum wages that were owed and not paid to the Plaintiffs and the Collective Members for the work they did during the Pay Periods, other than the October Pay Period.

184.   Defendants Hunter, Sivertsen, and Smith knew that the Plaintiffs and the Collective Members were owed minimum wages for the work they performed during the Pay Periods, other than the October Pay Period, and decided not to have those wages paid, either when they were due or at any time thereafter.

185.    The decisions by Defendants Hunter, Sivertsen, and Smith not to pay the minimum wages or any wages due to the Plaintiffs and the Collective Members for the Pay Periods other than the October Pay Period were willful and intentional.

186.    Defendants failed to make a good faith effort to comply with the FLSA with respect to the compensation of the Plaintiffs and the Collective Members.

187.    Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

188.    Because Defendants' violations of the FLSA were willful, the Plaintiffs and the Collective Members are entitled to liquidated damages.

189.    As a result of the intentional unlawful acts of Defendants, the Plaintiffs and the Collective Members were deprived of minimum wages that were due for the hours they worked during the Pay Periods and were not paid, and are entitled to recovery of such amounts, an amount equal to that amount in liquidated damages, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §216(b).

WHEREFORE, Plaintiffs, on behalf of themselves and the Collective Members, demand judgment against Defendants Hunter, Sivertsen, and Smith, jointly and severally, for the following:

A.    The minimum wages that were due for the hours they worked during the Pay Periods and that were not paid, as alleged above;

B.    An equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

C.    Attorneys' fees and costs pursuant to 29 U.S.C. § 216(b); and

D.    For such other relief as the Court deems fair and equitable.

## SECOND CAUSE OF ACTION
### Violation of the NJWPL,
### N.J.S.A. 34:11-4.1 et seq.
### (Brought on behalf of Plaintiffs and the New Jersey Class)

190.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

191.     Plaintiffs and the New Jersey Class Members were employed in New Jersey and were not paid any wages for their work during the Pay Periods specified above, except for half of the salary they were owed for the October Pay Period.

192.     The failure to pay the wages earned by the Plaintiffs and the New Jersey Class Members is a violation of the NJWPL.

193.     The failure to pay Plaintiffs Beauregard, Dougherty and Gonzalez and other members of the New Jersey Class Members the accrued but unused vacation pay they earned is a violation of the NJWPL.

194.     The failure to pay Plaintiffs Coltri, Gonzalez, Lyons and Spiliotis and New Jersey Class Members the expenses they incurred which RCC was obligated to reimburse is a violation of the NJWPL.

195.     RCC has not paid, cannot pay, and will not pay the amounts due.

196.     Because Defendants Hunter, Sivertsen, and Smith were the Directors of RCC, they are personally liable, jointly and severally, to the Plaintiffs and the New Jersey Class Members for the wages due. See Mulford v. Computer Leasing, Inc., 334 N.J. Super. 385, 393, 395, 397 (Law Div. 1999).

197.     All of the Defendants directly participated in the decisions to continue to employ the Plaintiffs and the New Jersey Class Members during the Pay Periods and not to pay them the wages earned during the Pay Periods, either when the wages were due or at any time thereafter.

198.    All of the Defendants were employers of the Plaintiffs and the New Jersey Class Members during the Pay Periods because they were the officers and members of the Board of Directors having the management of RCC, within the meaning of N.J.S.A. 34:11-4.1(a), and they are personally liable to the Plaintiffs and the New Jersey Class Members for the wages due.

WHEREFORE, Plaintiffs, on behalf of themselves and the New Jersey Class, demand judgment against Defendants Hunter, Sivertsen, and Smith, jointly and severally, for the following:

A.    For all unpaid salary owed to them;

B.    For all accrued but unpaid vacation pay owed to them

C.    For payment of all unreimbursed business expenses incurred by them;

D.    For attorneys' fees and costs; and

E.    For such other relief as the Court deems fair and equitable.

**THIRD CAUSE OF ACTION**
**Violation of the NJWHL,**
**N.J.S.A. 34:11-56a et seq.**
**(Brought on behalf of Plaintiffs and the New Jersey Class)**

199.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

200.    Plaintiffs and the New Jersey Class Members were employees during the Pay Periods within the meaning of the term "employee" in the NJWHL.

201.    Defendants were employers of Plaintiffs and the New Jersey Class Members during the relevant period within the meaning of the term "employer" in the NJWHL.

202.    The minimum wage provisions of the NJWHL apply to Defendants and protect Plaintiffs and the New Jersey Class Members.

203.   Plaintiffs and the New Jersey Class Members were not paid minimum wage, or any wages, for their work in the Pay Periods, except for half of the salary they were owed for the October Pay Period.

204.   The failure to pay the Plaintiffs and the New Jersey Class Members minimum wage or any wages at all for the work they performed during these Pay Periods, other than the October Pay Period, constitutes violations of the NJWHL.

205.   RCC has not paid, cannot pay, and will not pay the amounts due.

206.   Because Defendants Hunter, Sivertsen and Smith were the Directors of RCC, they are personally liable, jointly and severally, to the Plaintiffs and the New Jersey Class Members for the wages due.  See  Mulford v. Computer Leasing, Inc., 334 N.J. Super. 385, 393, 395, 397 (Law Div. 1999).

207.   All of the Defendants directly participated in the decisions to continue to employ the Plaintiffs and the New Jersey Class Members during the Pay Periods and not to pay Plaintiffs and the New Jersey Class Members the wages earned during the Pay Periods, either when the wages were due or at any time thereafter.

208.   Defendants engaged in a widespread pattern, policy, and practice of violating the NJWHL, as detailed in this Complaint.

209.   Defendants' violations of the NJWHL, as discussed in this Complaint, were willful and intentional.

WHEREFORE, Plaintiffs, on behalf of themselves and the New Jersey Class, demand judgment against Defendants Hunter, Sivertsen, and Smith, jointly and severally, for the following:

A.   The minimum wages that were due for the hours they worked during the Pay Periods and that were not paid, as alleged above;

B.     For attorneys' fees and costs, <u>N.J.S.A.</u> 34:11-56a-25; and

C.     For such other relief as the Court deems fair and equitable.

## **PRAYER FOR COLLECTIVE AND CLASS ACTION RELIEF**

Plaintiffs respectfully request an Order:

a.     Requiring Defendants to file with the Court and provide to Plaintiffs' counsel a list of all names and current (or best known) home addresses and email addresses of all individuals who worked for RCC but were not paid for all Pay Periods for which they should have been paid, were not paid for accrued vacation time for which they should have been paid, and/or were not reimbursed for business expenses they incurred;

b.     Authorizing Plaintiffs' counsel to issue a notice informing additional Collective Members who have not already opted in to this action that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit;

c.     Designating the named Plaintiffs Lori Beauregard, Dennis Beaulieu, Norman Coltri, Christopher Dougherty, Hector Gonzalez, Margaret Lyons, Dawn (Rosenberg) Minue, Donna Solomon, James Spiliotis and Malcolm Turdo as class representatives of the Collective and the New Jersey Class, and counsel of record as Class Counsel;

d.     Finding that Defendants willfully violated the applicable provisions of the FLSA, NJWHL and NJWPL by failing to pay all required wages to Plaintiffs and Collective/Class Members, including by failing to reimburse business expenses to Plaintiffs and Collective/Class Members and failing

35

to pay accrued but unused vacation time to Plaintiffs and Collective/Class Members;

e.      Granting judgment in favor of the Plaintiffs, the Collective Members, and the New Jersey Class Members on their FLSA, NJWHL and NJWPL claims;

f.      Awarding compensatory damages to the Plaintiffs, the Collective Members, and the New Jersey Class Members in amounts to be determined;

g.      Awarding pre-judgment and post-judgment interest;

h.      Awarding liquidated damages to the Plaintiffs and the Collective Members;

i.      Awarding all costs and reasonable attorneys' fees incurred in prosecuting this claim;

j.      Awarding reasonable incentive awards to the named Plaintiffs to compensate them for the time and effort they have spent and will spend protecting the interests of other Collective Class and New Jersey Class Members, and the risks they are undertaking;

k.      Granting leave to add additional plaintiffs to the case by motion, the filing of written consent forms, or any other method approved by the Court; and

l.      Granting any further relief that the Court deems just and equitable.

WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive (MB-7897)
Woodbridge, New Jersey 07095
(732) 855-6034

By: _____
       Maureen S. Binetti, Esq.

--and--

Kirsten Scheurer Branigan, Esq. (KB-8743)
LAW OFFICE OF KIRSTEN SCHEURER BRANIGAN, P.C.
527 Franklin Avenue
Nutley, NJ 07110
(973) 542-8096

Attorneys for Plaintiffs

Dated:  September 19, 2016

## DEMAND FOR TRIAL BY JURY

Pursuant to <u>Fed. R. Civ. P.</u> 38(b), Plaintiffs demand a trial by jury on all issues herein stated.

WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive (MB-7897)
Woodbridge, New Jersey 07095
(732) 855-6034

By: _____
        Maureen S. Binetti, Esq.

--and--

Kirsten Scheurer Branigan, Esq. (KB-8743)
LAW OFFICE OF KIRSTEN SCHEURER BRANIGAN, P.C.
527 Franklin Avenue
Nutley, NJ 07110
(973) 542-8096

Attorneys for Plaintiffs

Dated: September 19, 2016

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Pursuant to <u>Local Civil Rule</u> 11.2, the undersigned hereby certifies that to the best of her knowledge and information, the matter in controversy is not currently the subject of any other pending court action or arbitration proceeding, except that RCC has filed a Chapter 11 bankruptcy case which is pending in the United States Bankruptcy Court for the District of New Jersey, Case No. 15-18274 (MBK), in which the named Plaintiffs herein and other potential collective/class plaintiffs have asserted claims against RCC for the wages for which Plaintiffs seek payment in this case. However, as alleged in this Complaint, RCC will not be able to pay the wages Plaintiffs have sought in the bankruptcy case. In addition, a Complaint was filed against the within defendants by seven former employees, entitled <u>Apriella, et al. v Hunter</u>, Civil Action No. 3:16-CV-03599, in the District Court of New Jersey, seeing individual relief (not as part of a collective or class action). Such plaintiffs are excluded from the proposed collective/class in the within action.

WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive (MB-7897)
Woodbridge, New Jersey 07095
(732) 855-6034

By: _____
    Maureen S. Binetti, Esq.

--and--

Kirsten Scheurer Branigan, Esq. (KB-8743)
LAW OFFICE OF KIRSTEN SCHEURER BRANIGAN, P.C.
527 Franklin Avenue
Nutley, NJ 07110
(973) 542-8096

Attorneys for Plaintiffs

Dated:  September 19, 2016

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1(d)(3)</u>

Pursuant to <u>Local Civil Rule</u> 201.1(d)(3), the undersigned hereby certifies that to the best of her knowledge and information, the damages recoverable in this matter exceed the sum of $150,000, exclusive of interest and costs and punitive damages.

WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive (MB-7897)
Woodbridge, New Jersey 07095
(732) 855-6034

By _____
      Maureen S. Binetti, Esq.

--and--

Kirsten Scheurer Branigan, Esq. (KB-8743)
LAW OFFICE OF KIRSTEN SCHEURER BRANIGAN, P.C.
527 Franklin Avenue
Nutley, NJ 07110
(973) 542-8096

Attorneys for Plaintiffs

Dated:  September 19, 2016

#8749684.2

40