## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LORI BEAUREGARD,
DENNIS BEAULIEU,
CHRISTOPHER DOUGHERTY,
HECTOR GONZALEZ,
MARGARET LYONS,
DAWN (ROSENBERG) MINUE,
DONNA SOLOMON,
JAMES SPILIOTIS, and
MALCOLM TURDO, on behalf of
themselves and all others similarly
situated,

                    Plaintiffs,

     v.

MICHAEL W. HUNTER,
B. ERIC SIVERTSEN, and
RANDALL N. SMITH,

                  Defendants.

Civil Action

No. 3:16-CV-05689-AET-LHG

Return Date: January 3, 2017

---

## REPLY BRIEF OF DEFENDANTS B. ERIC SIVERTSEN AND RANDALL N. SMITH IN SUPPORT OF MOTION TO DISMISS <u>COMPLAINT AND DENY CERTIFICATION</u>

Anne M. Aaronson
Jennifer Platzkere Snyder
**DILWORTH PAXSON LLP**
457 Haddonfield Road, Suite 700
Cherry Hill, NJ 08002
(856) 675-1900
*Attorneys for Defendants B. Eric Sivertsen*
*& Randall N. Smith*

119396562_1

# <u>TABLE OF CONTENTS</u>

Reply brief of DEFENDANTS B. ERIC SIVERTSEN AND RANDALL N. SMITH in support of motion TO DISMISS COMPLAINT AND DENY CERTIFICATION ................................... 1

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... 1

I.        LEGAL ARGUMENT ......................................................................................... 1

    A.    THE FLSA CLAIM SHOULD BE DISMISSED ......................................... 1

        1.    No Common Policy That Violates The FLSA Is Identified. ................................. 1

        2.    Plaintiffs Fail To Allege Facts To Support A Plausible Claim That Defendants Are Liable For An FLSA Violation. ............................................................. 3

    B.    No Collective Action Should be Certified Because Plaintiffs Are Not Similarly Situated. ....................................................................................... 8

    C.    Supplemental Jurisdiction should not be exercised. ......................................... 9

    D.    Plaintiffs Cannot Meet the Requirements of Rule 23 ..................................... 12

II.       CONCLUSION ................................................................................................. 16

CERTIFICATE OF SERVICE ................................................................................... 1

i

# TABLE OF AUTHORITIES

## FEDERAL COURT CASES

*Baby Neal v. Casey*,

    43 F.3d 48 (3d Cir. 1994).................................................................................. 13, 14

*Barr v. Harrah's Entertainment, Inc.*,

    242 F.R.D. 287 (D.N.J. 2007) .............................................................................. 15

*De Asencio v. Tyson Foods, Inc.*,

    342 F.3d 301 (3d Cir. 2003)................................................................................. 11

*Knepper v. Rite Aid Corp.*,

    675 F.3d 249 (3d Cir. 2012)........................................................................ 9, 10, 11

*Osgood v. Harrah's Entertainment*,

    202 F.R.D. 115 (D.N.J. 2001) .............................................................................. 15

*Prudential Insurance Co. American Sales Practice Litigation Agent Actions v.*

    *Prudential Insurance Company of America*,

    148 F.R.D. 283 (3d Cir. 1998) ............................................................................. 15

*Rendler v. Gambone Bros. Development Co.*,

    182 F.R.D. 152 (E.D. Pa. 1998) ........................................................................... 15

## STATE COURT CASES

*Bowe v. Enviropro Basement Systems*,

    2013 WL 6280873 *5 (D.N.J., Dec. 4, 2013) ........................................................ 2

*Goodman v. Burlington Coat Factory*,

    2012 WL 5944000 *5 (D.N.J., Nov. 20, 2012) ...................................................... 3

## FEDERAL STATUTORY AUTHORITIES

28 U.S.C. §1367 (c) ................................................................................................... 12

Beyond their hyperbole and accusations that Defendants B. Eric Sivertsen and Randall N. Smith ("Defendants") are not being forthright with the Court, Plaintiffs do little to address the fact that they have not stated – and cannot state – a claim against Defendants and that certification of the Collective[1] and class action cannot be achieved.  Plaintiffs' Response and the accompanying certifications and exhibits, only bolster the bases for dismissal in this case.

## I.   LEGAL ARGUMENT

### A.   THE FLSA CLAIM SHOULD BE DISMISSED

#### 1.   No Common Policy That Violates The FLSA Is Identified.

Plaintiffs never identified any RCC policy that violates the FLSA or that affected Plaintiffs in the same manner.  This defect alone is fatal.  To save it, Plaintiffs contend that "Defendants' plan was to continue employing Plaintiffs while not paying them and fulfilling other financial obligations in order to avoid filing bankruptcy and in hopes of a 'liquidity event.'"  *See Response* at p. 19-20 (citing ¶¶ 34-91 of the Complaint).  However, this is not a common plan that can support an FLSA claim.

According to the Complaint, a decision was made not to pay certain wages for four-and-one-half specified pay periods between September 21, 2014 and April 20, 2015 – a time period spanning 15 pay periods over the entirety of Plaintiffs'

---

[1] Capitalized terms not defined herein have the meaning set forth in the Motion.

respective tenure with RCC.[2]  By implication, Plaintiffs **concede** that RCC had a common policy of paying them wages due.  Put another way, to the extent that RCC failed to pay wages, this failure was the result of something **other** than a common RCC compensation policy. The allegations in the Complaint demonstrate that RCC's policy was, in fact, to compensate its employees.  *See e.g. Complaint* at p. 11, ¶ 75 ("RCC's policy and practice was to pay employees the cash value for accrued but unused vacation when their employment ended.").  To the extent that RCC's failure to pay wages resulted from a decision made by anyone with authority to control RCC's funds, that decision would be **contrary to and inconsistent with** RCC's policy of paying its employees, and cannot not plausibly support a claim under the FLSA.

The cases cited in the Response demonstrate Plaintiffs' failure to state an FLSA claim.  In each case, the plaintiff alleged facts showing a companywide policy that was followed, and that resulted in employees not receiving compensation to the extent required by the FLSA.  *See e.g. Bowe v. Enviropro Basement Systems*, 2013 WL 6280873 *5 (D.N.J., Dec. 4, 2013) (defendants' conduct that violated the FLSA "was based on official policies of [Enviro Pro] which were applied equally to the entire putative class"; the testimony and

---

[2] Defendants calculated the number of pay periods based upon paragraph 35 of the Complaint, in which Plaintiffs allege that "there were two payroll dates per month on which RCC employees were paid."

2

declaration of the plaintiffs "demonstrates that the challenged policies were official policies of Enviro Pro that applied equally to all members of the putative class"); *Goodman v. Burlington Coat Factory*, 2012 WL 5944000 *5 (D.N.J., Nov. 20, 2012) (the Court notes, in considering conditional certification based on allegations that defendants misclassified plaintiffs as exempt, that "all Burlington ASMs nationwide are subject to the same uniform job descriptions, training procedures, work regulations, and compensation policies, including a uniform classification of all ASMs nationwide as 'exempt' under the FLSA").

By contrast, in the Complaint and Response, Plaintiffs merely identify instances when RCC's official policy was **not** followed. Plaintiffs do not identify any official RCC policy that violated the FLSA and Count I must be dismissed.

### 2.  Plaintiffs Fail To Allege Facts To Support A Plausible Claim That Defendants Are Liable For An FLSA Violation.

Plaintiffs have stated no factual allegation that Defendants are liable to Plaintiffs under the FLSA.  In the Response, Plaintiffs complain that Defendants fail to identify any reason why Plaintiffs' Complaint does not contain sufficient factual matter to state a claim against them. *See Response* at p. 9.  Defendants are unaware of Plaintiffs' reason for not setting forth sufficient facts to state a claim.

Plaintiffs' factual deficiencies are readily apparent.  Plaintiffs allege that Defendants decided to retain RCC's employees, to not pay wages to RCC employees, and to pay other obligations with RCC funds while RCC employees

were not being paid.   Plaintiffs' allegations, particularly those set forth in paragraphs 34-91, are conclusory, lack factual support, and merely recite factors considered in connection with the elements of an FLSA claim.

What is not alleged is as important as what is alleged.  This case involves ten named Plaintiffs and 52 opt-in Plaintiffs ranging from low-level employees all the way up to RCC's Head of Human Resources and its Chief Financial Officer.[3]  In all, 62 of the 89 possible members of the Collective (*see Response* at p. 2) opted in before the Complaint was filed.  Despite approximately 70 percent of the total possible number of Collective members being original parties, ***not one*** has made a single factual allegation in the Complaint or otherwise that he/she was hired to work for RCC by either Defendant.  ***Not one*** has alleged that he/she reported to either Defendant.  ***Not one*** has asserted that either of Defendants instructed him/her to perform services for RCC despite not being paid wages.  ***Not one*** has asserted that he/she informed either Defendant that employee wages were not being paid at the time or before such wages were not paid.[4]  ***Not one*** has asserted

---

[3] Because Defendants were not involved in RCC's day to day operations and did not participate in personnel decisions, they are unaware of the positions held by almost all of the Plaintiffs in this Action.  Accordingly, for purposes of the Motion, Defendants highlight only those of which they are presently aware.

[4] The Certification of Lori Beauregard (the "Beauregard Cert.") is a self-serving statement consisting of unsupported legal conclusions and hearsay.  Like the Complaint, the Beauregard Cert. is devoid of the very facts necessary to support a claim.  In particular, Plaintiff Beauregard certifies, at para. 17, that Mr. Morelli told her "that he had multiple conversations regarding RCC's financial difficulties

that he/she objected to either Defendant about wages not being paid.  *Not one* has asserted that either Defendant instructed him/her not to pay wages to any RCC employee.  *Not one* has asserted that either Defendant instructed him/her to pay any other RCC obligation instead of paying wages to any employee.  *Not one* provides any factual allegation regarding when either Defendant allegedly made a decision not to pay wages or how he/she knows that either Defendant made any such decision.  *Not one* provides any factual statement regarding how or from whom he/she was informed that wages would not be paid.  To the contrary, the Complaint sets forth only vague, generalized and conclusory allegations that Defendants made, and were aware of, the various personnel and payroll decisions.

Even in the Response, Plaintiffs provide no facts to support their position that either Defendant made a decision not to pay wages to any Plaintiff, directed any Plaintiff or other person not to pay wages, was informed by any Plaintiff or other person during the period referenced in the Complaint that non-officer employee wages were not being paid, directed the payment of RCC funds to obligations other than payroll or caused any Plaintiff or other person not to pay

---

and decisions not to make payroll with Defendants Hunter Sivertsen and Smith." Even if recited in the Complaint itself, this statement fails to support a claim against any Defendant.  No facts are given as to when the conversion allegedly occurred, the time period of the alleged discussions, what decisions had been made or who made those decisions.  Additionally, it is curious why Mr. Morelli himself does not provide a certification about these alleged discussions and, more so, that the material facts of these alleged discussions are not set forth in the Complaint.

wages to RCC employees. For example, in the Beauregard Cert., Plaintiff Beauregard states that she "followed the directives of the Defendants regarding payment of wages to employees…," (Beauregard Cert. at ¶8) – yet Ms. Beauregard fails to disclose what directives were given to her and by which of the Defendants. Ms. Beauregard also states that she "was not informed that wages were being withheld until after each decision to do so was made by Defendants." (Beauregard Cert. at ¶10) – yet she fails to indicate how she learned of each alleged decision, from whom she learned of it, and what she was told by the person from whom she was allegedly informed about it.  Ms. Beauregard further indicates that  she "did not agree with Defendants' decisions not to pay the wages of RCC employees and objected to same." (Beauregard Cert. at ¶11) – yet she does not provide any information as to who informed her that any of the Defendants made the decision not to pay wages or to whom she objected.[5]

---

[5] The repeated use by Plaintiffs of vague terms, such as "Defendants" and "Controlling Management Group" (as used in Exhibit E to the Gironda Cert.) appears purposeful given that the targets of Ms. Beauregard and other RCC officers have changed over time.  In the bankruptcy case, the "Controlling Management Group"– which included the Defendants and Plaintiff Morelli – was accused of making all of the personnel, wage and other company decisions resulting in the nonpayment of wages and initiation of RCC's bankruptcy case.  In this Action and in the Officer Litigation, it is the Defendants – but not Mr. Morelli - who are alleged to have made these decisions.  This tactic is nothing more than an attempt by certain RCC officers to deflect their own liability onto the independent directors who were purposely kept in the dark regarding RCC's true financial condition.

The email correspondence attached by Plaintiffs as Exhibit F to the Certification of Stephanie D. Gironda (the "Gironda Cert.") not only fails as evidence that Defendant Smith decided which RCC obligations were paid or knew that payroll to employees was missed, but actually supports and bolsters the fact that Smith *did not make any decision* regarding non-payment of wages or other RCC obligations.   Throughout the correspondence spanning from May 2014 through March 2015, Defendant Smith inquires of Plaintiff Morelli regarding the status of payments to Telecom Acquisition Group ("TAG").   If Defendant Smith had the authority to direct payments from RCC or had directed that payroll not be made to employees, as is baldly asserted in the Complaint, the emails between Plaintiff Morelli and Defendant Smith would show Defendant Smith directing Plaintiff Morelli not to make payroll and to make the payments to TAG instead. As the correspondence clearly shows, however, Defendant Smith had no authority to direct the payment of RCC debts, and did not divert RCC funds from payroll to other obligations.    Moreover, on several occasions in that same email correspondence, Plaintiff Morelli informs Defendant Smith that RCC is experiencing tight cash flow, was unable to fully fund one payroll such that payroll to RCC vice presidents had been missed and that RCC was at risk of missing a payroll to the entire company.   Nowhere does Mr. Morelli state that RCC ever

missed a payroll to the entire company or that payroll to non-officer employees had been missed at any point.

**B.    No Collective Action Should be Certified Because Plaintiffs Are Not Similarly Situated.**

As defined by the Plaintiffs in their Complaint, the Collective includes individuals who admittedly worked in different roles, had different job duties, and worked in different geographic locations across the country.  Some individuals are officers who had supervisory roles over other Plaintiffs and governed RCC's day to day operations, including decisions relating to the payment of RCC obligations.

In an attempt to distract the Court from these dissimilarities, Plaintiffs assert that the members of the Collective are similarly situated because, regardless of their job duties, each was not paid wages by RCC.  *See Response* at p. 20.  Based on the claims register in RCC's bankruptcy case, however, each person excluded from the Collective (except Defendants Sivertsen and Smith, who were not compensated by RCC) was also not paid by RCC.  No justification is given to exclude certain individuals simply because they are chose to proceed in the Officer Litigation, especially given that any individual can elect not to opt-in to the Collective.  Curiously, these individuals are excluded, yet Ms. Marshall, who is the plaintiff in the separately-filed Marshall Litigation, is included.  Further, Lindsay Hunter Carrion is excluded, but, like the Plaintiffs, Ms. Carrion also filed a claim in RCC's bankruptcy case seeking unpaid wages.  The Collective, as defined, is

8

***not*** a group of similarly situated individuals, but is instead a group of only those individuals that the named Plaintiffs will permit to opt-in, regardless of their roles within RCC or the fact that they are owed wages by RCC. In addition to these differences, as detailed in the Motion, the reasons why certain Plaintiffs did not receive payment of wages differ - some decided to defer payment of their own wages, while others did not receive payment because, apparently, funds were not available for RCC to make payroll. Plaintiffs assert that they are nevertheless similarly situated because the Supreme Court has held that consent is not a defense to the nonpayment of wages. *See Response* at p. 22. Plaintiffs' argument is irrelevant. The Motion does not implicate consent as the differentiating factor. In deciding to defer payment of their own wages, these high ranking Plaintiffs are necessarily dissimilar to the Plaintiffs who did not decide to defer payment of their own wages.

This case does not require discovery in order for the Court to determine that certification of the Collective should not issue. There are clear and material distinctions among the proposed Collective that are evident on the face of the Complaint, in the Response and as a matter of public record.

## C.   <u>Supplemental Jurisdiction should not be exercised.</u>

Contrary to Plaintiffs' allegations, Defendants neither intended nor attempted to mislead this Court by not citing *Knepper v. Rite Aid Corp.*, 675 F.3d

249 (3d Cir. 2012) in the Motion.  The *Knepper* case is not dispositive of the issues in the Motion and does not help Plaintiffs' cause.  While *Knepper* may be relevant to determining the propriety of exercising supplemental jurisdiction *if* an FLSA claim was sufficiently plead *and* the State Law claims paralleled the FLSA claim and/or *if* the federal court had an independent basis to exercise jurisdiction over the State Law claims, that is simply not the case here.  However, in the interest of full disclosure to the Court, Defendants provide an analysis of the *Knepper* case.

In *Knepper*, a nationwide FLSA action was commenced in the Middle District of Pennsylvania, in which both Mr. Fisher and Mr. Vasvari had opted in. Separately, Mr. Fisher filed a class action in the District of Maryland, based on federal diversity jurisdiction, seeking certain damages under Maryland state law. Mr. Vasvari filed a similar class action in the District of Northern Ohio seeking damages under Ohio law, again based on federal diversity jurisdiction.   Mr. Fisher's case was dismissed under the "first-filed" rule, in deference to the FSLA action.  Mr. Fisher refiled his class action in the Middle District of Pennsylvania. Mr. Vasvari's action was transferred to the Middle District of Pennsylvania based on the forum selection clause in the his employment contract.  As a result, the FLSA action, as well as the two diversity based State Law claims were then simultaneously pending in the Middle District of Pennsylvania.  The district court for the Middle District of Pennsylvania dismissed the State Law actions on the

10

basis that the opt-out nature of those claims was inherently incompatible with the opt-in nature of the FLSA claim, which shared the same determinative issue. *Knepper*, 675 F.3d at 253.  Noting a split among the courts that have considered the issue of inherent incompatibility in the context of dual-filed FLSA and state law class actions, the Third Circuit agreed with the courts that found no inherent incompatibility preventing the exercise of supplemental jurisdiction over the State Law claims in appropriate cases.  *Id.* at 259-60.  The Court noted that its decision was not inconsistent with its prior decision in *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003), in which it ruled that the trial court abused its discretion by exercising supplemental jurisdiction over an opt-out state wage law class action because the State Law claims involved a novel or complex issue of state law that would predominate over the federal claim.  *Id.* at 261.  The *Knepper* Court stated that, unlike the State Law claims in *De Asencio*, the claims asserted by Fisher and Vasvari were not novel or complex, and an independent basis for federal jurisdiction existed over the State Law claims brought by Fisher and Vasvari under the Class Action Fairness Act ("CAFA").  *Id.*

Unlike *Knepper*, Count I of the instant Complaint fails because the Plaintiffs do not state an FLSA claim against Defendants.  The FLSA claim is the ***only*** basis for federal jurisdiction.  The State Law claims, which are opt-out claims through which Plaintiffs are attempting to bring additional parties into federal court, do not

11

involve federal diversity jurisdiction (and CAFA does not apply) so no independent basis for federal jurisdiction exists.   Additionally, though not necessarily novel or complex, the State Law claims do not parallel the FLSA claim, and involve claims that are different from and additional to any relief that could be obtained under the FLSA.

Accordingly, for the reasons stated in the Motion and as supplemented here, no basis exists for this Court to exercise supplemental jurisdiction over the State Law claims and Counts II and III of the Complaint must be dismissed pursuant to 28 U.S.C. §1367 (c).

### D.   <u>Plaintiffs Cannot Meet the Requirements of Rule 23.</u>

As set forth in the Motion, the facts and circumstances of this case compel denial of class certification, even at this early stage.

The potential class is limited to 28 individuals – all of whom worked in RCC's New Jersey office and at least 10 of whom are the named Plaintiffs.  It is hard to believe that, in a small office of 28 people, the 10 named Plaintiffs do not know the identity of or have not already informed the other 18 potential class members.  Indeed, the other 18 potential class members may already be part of the group of 52 opt-in members of the proposed Collective, or may not want to participate – making it inappropriate to certify a class that would involuntarily bind them to this Action unless they affirmatively opt out. The cases cited by Plaintiffs

in which class sizes smaller than 28 have been certified were decided between 1967 and 1985, before electronic communication and electronic filing became available or became the norm.   The use of electronic communication virtually eliminates many typical litigation costs.  Video depositions, joint discovery among parties and telephonic hearings are also the norm today.  Moreover, to the extent that individuals have common issues or claims, courts can easily accommodate joint submissions and joint discovery to ensure efficiency and eliminate duplication.   Accordingly, joinder of 28 potential class members is far from impractical.

Additionally, Plaintiffs' claims are neither common nor typical of the class. Plaintiffs state that the potential class is comprised of those who were subject to "one common employment practice of Defendants' failure to pay members of the Class as a cost-cutting measure in order to attempt to save their Company." *See Response* at p. 35.  If this is indeed the issue that Plaintiffs are asserting to support their claims, this Court must dismiss the Complaint out of hand.  Plaintiffs were not employed by the Defendants, but were employed by RCC. It is ***RCC's*** employment practices that are at issue with respect to Plaintiffs' claims.  Only if RCC had an employment practice that violated state or federal law could any individual be potentially subject to personal liability. Plaintiffs' reference to *Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) is irrelevant.  In that case, the Third

13

Circuit found commonality and typicality because the defendant's conduct was central to the claims of all class members, regardless of the plaintiffs' individual injuries. *See Response* at p. 35. Plaintiffs here assert a similar injury (nonpayment of wages), despite the fact that the cause differs among the Plaintiffs. This is the polar opposite of *Baby Neal*. Plaintiffs' claims lack commonality and typicality because the cause of their injury differs among the Plaintiffs and, because some Plaintiffs are implicated in the wage claims of other Plaintiffs. Even though they have not yet formally asserted their defenses here, as a matter of public record, Defendants have asserted counterclaims against Plaintiffs Beauregard, Morelli and Gray regarding their involvement in the nonpayment of their own wages and wages owed to RCC employees. *See Third Party Complaint*, Civil Action 16-3599(AET) [Docket No. 11]. These claims will absolutely be pursued in the Officer Litigation as well as in this case, if it is not dismissed.

Additionally, some Plaintiffs assert claims for accrued but unpaid vacation time and unpaid business expenses, even though they provide no facts as to when these claims allegedly accrued or became due or payable. To the extent these claims arose after RCC filed for Chapter 11 on May 1, 2015, RCC could only pay obligations authorized by the Bankruptcy Code or Bankruptcy Court. Thus, these claims resulted from the application of federal bankruptcy law and ***not*** from any RCC policy that violated federal or state law.

14

Plaintiffs' reliance on *Barr v. Harrah's Entertainment, Inc.*, 242 F.R.D. 287 (D.N.J. 2007) and *Rendler v. Gambone Bros. Development Co.*, 182 F.R.D. 152 (E.D. Pa. 1998), is unavailing.   In these cases, the courts found that class certification was appropriate because the asserted individualized defenses would not be a major focus of the litigation.  *See Response* at p. 37-38.  Here, to the extent that RCC violated federal or state law, the focus will be on determining the person(s) responsible for RCC's violation - implicating the conduct of certain Plaintiffs and destroying any typicality of the claims at issue.

Finally, Plaintiff Beauregard is not an appropriate class representative.  She held a high ranking position with RCC and, as learned in the Marshall Litigation, was copied on some of the correspondence among officers regarding RCC's inability to pay wages – ***before*** employees were so informed by the officers. Despite this knowledge, Ms. Beauregard never informed Defendants that RCC would not make payroll to its employees.  Ms. Beauregard is also subject to claims brought by Defendants in the Officer Litigation.  The cases cited by Plaintiffs on page 40 of the Response are materially distinguishable and do not support Ms. Beauregard's representation of any class here.   In both *Osgood v. Harrah's Entertainment*, 202 F.R.D. 115, 127 (D.N.J. 2001) and *Prudential Insurance Co. American Sales Practice Litigation Agent Actions v. Prudential Insurance Company of America*, 148 F.R.D. 283 (3d Cir. 1998), the named plaintiffs and

proposed class members were similarly adversely affected by a company policy for which the plaintiffs were seeking recovery.  As set forth above, no such policy is identified here, and Ms. Beauregard's potential liability for claims asserted by other Plaintiffs and class members creates an insurmountable conflict.

## II.   <u>CONCLUSION</u>

For the foregoing reasons and those set forth in the Motion, the Complaint must be dismissed and certification must be denied.

Respectfully submitted,

/s/ Anne M. Aaronson
Anne M. Aaronson
Jennifer Platzkere Snyder
**DILWORTH PAXSON LLP**
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Tel: 215-575-7100
*Attorneys for Defendants B. Eric Sivertsen & Randall N. Smith*

Dated: December 27, 2016

## <u>CERTIFICATE OF SERVICE</u>

I, Anne M. Aaronson, Esquire, hereby certify that on December 27, 2016, I caused the foregoing Reply Brief of B. Eric Sivertsen and Randall N. Smith in Support of Motion to Dismiss Complaint to be filed via the Court's ECF System and therefore served upon all counsel of record as follows:

| | |
|---|---|
| Maureen S. Binetti | Kirsten Scheurer Branigan |
| **WILENTZ, GOLDMAN & SPITZER, P.A.** | **LAW OFFICE OF KIRSTEN SCHEURER BRANIGAN, P.C.** |
| 90 Woodbridge Center Drive, Suite 900, Box 10 | 527 Franklin Avenue |
| Woodbridge, New Jersey 07095 | Nutley, New Jersey 07110 |
| *Attorneys for Plaintiffs* | *Attorneys for Plaintiffs* |


Dated: December 27, 2016                    /s/ Anne M. Aaronson___
                                                                    Anne M. Aaronson

119396562_1